UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CHRISTOPHER A. LaVOY; TIFFANY & BOSCO, P.A., <br><br> Plaintiffs, <br><br> v. <br><br> JAMES BERTRAM MORRIS; JEANEEN McGEE; MARK NISHI; and ANNE MARIE GRODEN, <br><br> Defendants. | Case No. 2:13-cv-01008-APG-PAL <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> (Dkt. Nos. 12, 27, 28) |

I. **BACKGROUND**

On June 6, 2013, attorney Christopher A. LaVoy ("LaVoy") filed a Complaint in Interpleader against James Bertram Morris ("Morris") and Jeanann McGee ("McGee"). (Dkt. No. 1.) LaVoy's law firm, Tiffany & Bosco, P.A. ("T&B"), holds about $440,000 in its trust account from a settlement between Morris and his former attorneys (not T&B) in a malpractice lawsuit (the "Proceeds"). T&B represented Morris in that suit and continues to represent him in his domestic relations case in Arizona. McGee is Morris's ex-wife and claims in interest in the Proceeds under the Property Settlement Agreement negotiated as part of their divorce.

On July 15, 2013, LaVoy filed a Motion for Entry of Order Permitting Interpleader (the "Interpleader Motion"). (Dkt. No. 12.) Morris joined LaVoy's motion. (Dkt. No. 15.) McGee moved to dismiss the Complaint and opposed the Interpleader Motion. (Dkt. Nos. 17, 19.)

On August 12, 2013, LaVoy and T&B (collectively, the "Plaintiffs") filed their First Amended Complaint in Interpleader ("FAC"). (Dkt. No. 22.) The FAC rendered moot the previous motion to dismiss and McGee's opposition to the Interpleader Motion. (Dkt. No. 23.) The FAC added T&B as a plaintiff. The FAC also added Mark Nishi ("Nishi") and Anne Marie Groden ("Groden") (collectively, the "Lenders") as defendants. Plaintiffs allege that the Lenders lent money to Morris to fund the malpractice suit that resulted in the Proceeds, and therefore the Lenders may claim an interest in the Proceeds.

On August 29, 2013, McGee moved to dismiss the FAC for lack of subject matter jurisdiction, improper venue, and failure to state a claim. (Dkt. No. 28.) That same day, Morris filed a motion for expedited accounting and disbursement of the Proceeds. (Dkt. No. 27.) These two motions, along with the Interpleader Motion (Dkt. No. 12) are the subject of this Order.

## II. <u>ANALYSIS</u>

### A. Lack of Subject Matter Jurisdiction – FED. R. CIV. P. 12(b)(1)

McGee contends that the "minimal diversity" required under 28 U.S.C. § 1335 is not established because the Lenders are not *bona fide* claimants to the Proceeds and Morris is not a citizen of Nevada. The Lenders are *bona fide* "adverse" claimants to the Proceeds only if they have a security interest in the Proceeds. *See Valley Bank of Nev. v. City of Henderson*, 528 F. Supp. 907, 916 (D. Nev. 1981). Otherwise, they are Morris's general creditors and have no greater interest in the Proceeds than in Morris's other property (whatever that may be). *See Libby, McNeill, & Libby v. City Nat'l Bank*, 592 F.2d 504, 509 (9th Cir. 1978); *Nev. ex rel. Colo. River Comm'n of Nev. v. Pioneer Companies, Inc.*, 245 F. Supp. 2d 1120, 1128 (D. Nev. 2003); *Am. Family Mut. Ins. Co. v. Roche*, 830 F. Supp. 1241, 1245 (E.D. Wis. 1993).

"Under the Arizona version of the Uniform Commercial Code a security interest attaches when (1) there is an agreement that it attach, (2) value is given by the secured party, and (3) the debtor has rights in the collateral. *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 618 P.2d 240, 242 (Ariz. Ct. App. 1980); *see* A.R.S. § 47-9203(B). The Funding Agreements between Morris and the Lenders do not demonstrate an agreement that a security interest would attach to the

Proceeds.[1] (*See* Dkt. No. 28-3 at 2–4.) There are two apparent connections between the loaned money and the malpractice suit: (1) that money was used to fund the suit, and (2) the loan would be repaid only if the suit were successful. (*See id.*) The success of the suit was merely a condition precedent to repayment. There is no indication that repayment would be specifically made out of the settlement proceeds or that the parties intended to attach a security interest to the Proceeds.

Nor is it clear that a promise to repay the Lenders out of the Proceeds would have established a security interest. *Cf. Pioneer Plumbing Supply Co. v. Sw. Sav. & Loan Ass'n*, 428 P.2d 115, 121 (Ariz. 1967) (equitable lien in fund not created by promise to make payments out of that fund). Moreover, there is no indication that Nishi or Groden perfected their alleged security interests. *See Valley Bank*, 528 F. Supp at 916.

Morris contends that Arizona law recognizes an equitable lien in certain situations where a person advances funds that create or improve something. (Dkt. No. 47-1 at 9 (citing *Pioneer Plumbing*, 428 P.2d at 121).) Morris misconstrues *Pioneer Plumbing*. There, the issue was

> whether the mere creation of a construction loan fund [by a lender] is such an inducement to . . . mechanics [hired by the borrower] that they have a right to those funds for payment even where there is a prior recorded interest in the property and the borrower has not complied with the construction loan contract sufficiently to make him entitled to the particular portion of the funds sought.

*Id.* at 121. The court answered in the negative. "[A]n agreement to pay out of a particular fund does not create an equitable lien on the fund, or the property from which the fund was obtained." *Id.* Aside from implicitly recognizing the validity of mechanics' liens, the *Pioneer Plumbing* holding does not even tangentially address Morris's broad proposition that an equitable lien is created whenever a person's financial contribution helps create something of value. Although equitable liens are just that—equitable—this Court will not broadly interpret the context in which equitable liens are available under Arizona law to include loans that fund litigation expenses without some more specific guidance from the Arizona state courts or Arizona statute. Finally, contemplating the equities, this Court does not view the circumstances of this case as sufficient to create an equitable lien in the Proceeds.

---

[1] The Court may consider the Funding Agreements because they were incorporated by reference into the FAC. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Morris next attempts to analogize the asserted equitable lien to the common fund doctrine and to attorney charging liens. (*Id.* (citing *Langerman Law Offices, P.A. v. Glen Eagles at Princess Resort*, 204 P.3d 1101, 1103 (Ariz. Ct. App. 2009); *Kerr v. Killian*, 3 P.3d 1133, 1137–38 (Ariz. Ct. App. 2000).)

> Under the common fund doctrine a court may award attorneys' fees to counsel for the prevailing side whose efforts in litigation create or preserve a common fund from which others who have undertaken no risk or cost will nevertheless benefit. . . . The purpose of the doctrine is to compensate counsel for producing such benefits and to preclude the unjust enrichment of those who receive the benefits.

*Kerr*, 3 P.3d at 1137–38. Similarly, attorney charging liens "ensure that a dishonest client does not walk away with an award secured for the client through the attorney's efforts without paying the attorney for those efforts." *Langerman*, 204 P.3d at 1103.

Both of these doctrines reward attorneys for their direct participation in a case. Litigation funders do not directly "produce" benefits or "secure" awards for the litigant. They are at least one step removed as they fund the attorneys (or the pro se litigant) who themselves directly obtain the relevant benefits. Moreover, the Lenders have other remedies to recover any debt owed to them, including suing Morris under the Funding Agreements. Therefore, defendants Nishi and Groden are not proper claimants to the Proceeds for purposes of this interpleader action.

The next issue is whether Morris's domicile destroys diversity for purposes of the interpleader statute. Diversity jurisdiction is established for statutory interpleader if Morris and McGee are citizens of different states, or if one of them is a citizen of any state and the other is a citizen or subject of a foreign state. 28 U.S.C. §§ 1332(a), 1335(a)(1). One's state of citizenship is defined by domicile, not residence. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Id.*

Plaintiffs plead that Morris is a Nevada citizen, and he admits this. (FAC ¶ 4; Dkt. No. 26 ¶ 4.) However, the Court is not required to deem true without examination that Morris is a citizen of Nevada because domicile is a mixed question of law and fact. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986); *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The party asserting diversity

jurisdiction must justify her allegations by a preponderance of evidence. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S.178, 189 (1936).

"[A] person's domicile is not lost until a new one is acquired." *Lew*, 797 F.2d at 750. "A change in domicile requires the confluence of (a) physical presence at the new location with (b) an intention to remain there indefinitely." *Id.*

> [T]he determination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes.

*Id.* at 750. There is a presumption in favor of a person's established domicile against her alleged newly-acquired domicile. *Id.* at 751.

"'It is well-settled that an American citizen living abroad cannot invoke federal court jurisdiction under 28 U.S.C. § 1332(a) because he or she is not considered a citizen[] of any state as that section requires.'" *Turan Petrol., Inc. v. Lentin*, 482 F. Supp. 2d 1170, 1171 (C.D. Cal. 2007) (quoting *De Wit v. KLM Royal Dutch Airlines, N.V.*, 570 F. Supp. 613, 617 (S.D.N.Y. 1983)). Put differently, an American citizen living abroad is neither domiciled in any state within the U.S., nor the citizen or subject of a foreign nation. *See Brady v. Brown*, 51 F.3d 810, 815 (9th Cir. 1995). Therefore, that person cannot invoke diversity jurisdiction under 28 U.S.C. § 1332(a). *Id.*

To determine subject matter jurisdiction on a motion to dismiss under Rule 12(b)(1), the Court may consider extra-pleading evidence that is properly before the court. *Ass'n of Am. Med. Colleges v. U.S.*, 217 F.3d 770, 778 (9th Cir. 2000). Therefore, the Court may consider Morris's sworn declaration (Dkt. No. 47-1 at 21–22) without converting the instant motion into one for summary judgment under Rule 12(d). Following the same reasoning, the Court may *not* consider the e-mails submitted by McGee which seem to indicate that Morris may no longer be a resident of Nevada (Dkt. No. 28-2 at 37–47), because they are unauthenticated. *See Clark v. County of Tulare*, 755 F. Supp. 2d 1075, 1084 (E.D. Cal. 2010). Likewise, the Court may not consider the

affidavit by Keith A. Sobraske (Dkt. No. 28-3 at 6–142), a private investigator that McGee hired, because the exhibits Sobraske relies upon are unauthenticated. *See* FED. R. EVID. 901, 902.

In his declaration, Morris avers that his "last known address" was in Las Vegas, Nevada. During the past year, he has stayed with friends (in unknown locations). As of October 2, 2013, the date of the declaration, he was staying in a hotel in Ukraine. When in the United States, he stays with friends (in unknown locations within the U.S.). His personal property is stored in Nevada, and his sister is a resident of Nevada. He declares that his employer, Mobile POS, intends to base its company in Nevada once funding is secured, although the date when this might occur is uncertain. Morris also declares that he intends to purchase or lease a residence in Nevada once this uncertain date of funding comes to pass. Finally, he avers that "[i]t is [his] current intention and for the foreseeable future it is [his] intent to remain a resident of Las Vegas." (Dkt. No. 47-1 at 22.)

The Court is not convinced by a preponderance of the evidence that Morris was, or is currently, domiciled in Nevada. He provides a "last known address," but does not indicate this was his prior *residence*. He does not affirmatively state that he ever lived in Nevada or for how long. In the absence of long-term physical presence, the other indicia of domicile take on greater meaning. *See Abbot v. United Venture Capital, Inc.*, 718 F. Supp. 823, 826–827 (D. Nev. 1988). He declares that he will lease or purchase a home whenever he returns to Nevada, confirming that he does not presently have a "fixed habitation or abode" in Nevada. *Lew*, 797 F.2d at 750. Although it is relevant that he has personal property and family in Nevada, those facts are insufficient to overcome the predominant fact that he does not have a current residence in Nevada. His claim of Nevada residency rings hollow in the absence of a "fixed habitation or abode" to which he could return. *See* 13E ARTHUR R. MILLER ET AL., FEDERAL PRACTICE & PROCEDURE § 3612 (3d ed. 2013) ("Domicile . . . has both a physical and mental dimension[.]").

However, it is unclear that he has established a new domicile outside of the United States. There is no indication that he intends to reside in Ukraine, or anywhere else, either indefinitely or permanently. Thus, Morris's domicile is uncertain. He appears to be "stateless." *See Smith v. Simmons*, 2008 WL 744709 at *9 (E.D. Cal. 2008). The presumption against newly-acquired

domicile does not apply because Morris has not sufficiently established that he was domiciled in Nevada prior to initiating his world travels. He has not established that he is domiciled in any state other than Arizona, which would be necessary to establish diversity jurisdiction under 28 U.S.C. § 1335. Moreover, because Morris *could* be domiciled in Arizona, diversity jurisdiction is improper. *Nablo v. Desert Plastics, LLC*, 2006 WL 288394 at *3 (D. Ariz. 2006) ("In the absence of an affirmative allegation of Plaintiff's state of domicile, the Court cannot simply assume his state of citizenship.").

Plaintiffs and Morris have failed to prove the "minimal diversity" required for subject matter jurisdiction under the interpleader statute, 28 U.S.C. § 1335.

### B. Improper Venue – FED. R. CIV. P. 12(b)(3)

Under 28 U.S.C. § 1397, venue for interpleader actions is proper "in the judicial district in which one or more of the claimants reside." In accord with the above, the residency of Nishi and Groden is irrelevant. McGee is an Arizona resident. Morris has not established that he was a Nevada resident on the date this case was filed. Therefore, venue in the District of Nevada is improper.

### III. CONCLUSION

For the reasons set forth above, the Court hereby ORDERS:

1. The Motion to Dismiss (Dkt. No. 28) is GRANTED on two independent grounds: lack of subject matter jurisdiction under Rule 12(b)(1) and improper venue under Rule 12(b)(3).
2. The Interpleader Motion (Dkt. No. 12) is DENIED as moot.
3. The motion for expedited accounting (Dkt. No. 27) is DENIED as moot.

Dated: December 12, 2013

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE