1

2

3

4

5            UNITED STATES DISTRICT COURT

6              DISTRICT OF NEVADA

7                    * * *

8   CHRISTOPHER A. LaVOY; TIFFANY &              Case No. 2:13-cv-01008-APG-PAL
    BOSCO, P.A.,
9
                          Plaintiffs,           **ORDER GRANTING MOTION TO DISMISS**
10
11          v.
                                                (Dkt. Nos. 12, 27, 28)
    JAMES BERTRAM MORRIS; JEANEEN
12  McGEE; MARK NISHI; and ANNE MARIE
    GRODEN,
13
                          Defendants.
14

15

16

17  **I.      BACKGROUND**

18          On June 6, 2013, attorney Christopher A. LaVoy ("LaVoy) filed a Complaint in

19  Interpleader against James Bertram Morris ("Morris") and Jeanann McGee ("McGee"). (Dkt. No.

20  1.) LaVoy's law firm, Tiffany & Bosco, P.A. ("T&B"), holds about $440,000 in its trust account

21  from a settlement between Morris and his former attorneys (not T&B) in a malpractice lawsuit

22  (the "Proceeds"). T&B represented Morris in that suit and continues to represent him in his

23  domestic relations case in Arizona. McGee is Morris's ex-wife and claims in interest in the

24  Proceeds under the Property Settlement Agreement negotiated as part of their divorce.

25          On July 15, 2013, LaVoy filed a Motion for Entry of Order Permitting Interpleader (the

26  "Interpleader Motion"). (Dkt. No. 12.) Morris joined LaVoy's motion. (Dkt. No. 15.) McGee

27  moved to dismiss the Complaint and opposed the Interpleader Motion. (Dkt. Nos. 17, 19.)

28

1        On August 12, 2013, LaVoy and T&B (collectively, the "Plaintiffs") filed their First

2   Amended Complaint in Interpleader ("FAC"). (Dkt. No. 22.)  The FAC rendered moot the

3   previous motion to dismiss and McGee's opposition to the Interpleader Motion. (Dkt. No. 23.)

4   The FAC added T&B as a plaintiff.  The FAC also added Mark Nishi ("Nishi") and Anne Marie

5   Groden ("Groden") (collectively, the "Lenders") as defendants.  Plaintiffs allege that the Lenders

6   lent money to Morris to fund the malpractice suit that resulted in the Proceeds, and therefore the

7   Lenders may claim an interest in the Proceeds.

8        On August 29, 2013, McGee moved to dismiss the FAC for lack of subject matter

9   jurisdiction, improper venue, and failure to state a claim. (Dkt. No. 28.)  That same day, Morris

10  filed a motion for expedited accounting and disbursement of the Proceeds. (Dkt. No. 27.)  These

11  two motions, along with the Interpleader Motion (Dkt. No. 12) are the subject of this Order.

12

13  **II.**    **ANALYSIS**

14      **A.**    **Lack of Subject Matter Jurisdiction – FED. R. CIV. P. 12(b)(1)**

15       McGee contends that the "minimal diversity" required under 28 U.S.C. § 1335 is not

16  established because the Lenders are not *bona fide* claimants to the Proceeds and Morris is not a

17  citizen of Nevada.  The Lenders are *bona fide* "adverse" claimants to the Proceeds only if they

18  have a security interest in the Proceeds. *See Valley Bank of Nev. v. City of Henderson*, 528 F.

19  Supp. 907, 916 (D. Nev. 1981).  Otherwise, they are Morris's general creditors and have no

20  greater interest in the Proceeds than in Morris's other property (whatever that may be). *See Libby,*

21  *McNeill, & Libby v. City Nat'l Bank*, 592 F.2d 504, 509 (9th Cir. 1978); *Nev. ex rel. Colo. River*

22  *Comm'n of Nev. v. Pioneer Companies, Inc.*, 245 F. Supp. 2d 1120, 1128 (D. Nev. 2003); *Am.*

23  *Family Mut. Ins. Co. v. Roche*, 830 F. Supp. 1241, 1245 (E.D. Wis. 1993).

24       "Under the Arizona version of the Uniform Commercial Code a security interest attaches

25  when (1) there is an agreement that it attach, (2) value is given by the secured party, and (3) the

26  debtor has rights in the collateral. *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 618 P.2d 240,

27  242 (Ariz. Ct. App. 1980); *see* A.R.S. § 47-9203(B).  The Funding Agreements between Morris

28  and the Lenders do not demonstrate an agreement that a security interest would attach to the

1    Proceeds.[1]  (*See* Dkt. No. 28-3 at 2–4.)  There are two apparent connections between the loaned

2    money and the malpractice suit: (1) that money was used to fund the suit, and (2) the loan would

3    be repaid only if the suit were successful. (*See id.*)  The success of the suit was merely a condition

4    precedent to repayment.  There is no indication that repayment would be specifically made out of

5    the settlement proceeds or that the parties intended to attach a security interest to the Proceeds.

6         Nor is it clear that a promise to repay the Lenders out of the Proceeds would have

7    established a security interest. *Cf. Pioneer Plumbing Supply Co. v. Sw. Sav. & Loan Ass'n*, 428

8    P.2d 115, 121 (Ariz. 1967) (equitable lien in fund not created by promise to make payments out

9    of that fund).  Moreover, there is no indication that Nishi or Groden perfected their alleged

10   security interests. *See Valley Bank*, 528 F. Supp at 916.

11        Morris contends that Arizona law recognizes an equitable lien in certain situations where a

12   person advances funds that create or improve something. (Dkt. No. 47-1 at 9 (citing *Pioneer*

13   *Plumbing*, 428 P.2d at 121).)  Morris misconstrues *Pioneer Plumbing*.  There, the issue was

14
15
16
   > whether the mere creation of a construction loan fund [by a lender] is such an
   > inducement to . . . mechanics [hired by the borrower] that they have a right to
   > those funds for payment even where there is a prior recorded interest in the
   > property and the borrower has not complied with the construction loan contract
   > sufficiently to make him entitled to the particular portion of the funds sought.

17   *Id.* at 121.  The court answered in the negative.  "[A]n agreement to pay out of a particular fund

18   does not create an equitable lien on the fund, or the property from which the fund was obtained."

19   *Id.*  Aside from implicitly recognizing the validity of mechanics' liens, the *Pioneer Plumbing*

20   holding does not even tangentially address Morris's broad proposition that an equitable lien is

21   created whenever a person's financial contribution helps create something of value.  Although

22   equitable liens are just that—equitable—this Court will not broadly interpret the context in which

23   equitable liens are available under Arizona law to include loans that fund litigation expenses

24   without some more specific guidance from the Arizona state courts or Arizona statute.  Finally,

25   contemplating the equities, this Court does not view the circumstances of this case as sufficient to

26   create an equitable lien in the Proceeds.

27   _____

28        [1] The Court may consider the Funding Agreements because they were incorporated by reference
     into the FAC. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

1    Morris next attempts to analogize the asserted equitable lien to the common fund doctrine

2    and to attorney charging liens. (*Id.* (citing *Langerman Law Offices, P.A. v. Glen Eagles at*

3    *Princess Resort*, 204 P.3d 1101, 1103 (Ariz. Ct. App. 2009); *Kerr v. Killian*, 3 P.3d 1133, 1137–

4    38 (Ariz. Ct. App. 2000).)

5
> Under the common fund doctrine a court may award attorneys' fees to counsel for
> the prevailing side whose efforts in litigation create or preserve a common fund
6
> from which others who have undertaken no risk or cost will nevertheless benefit.
> . . . The purpose of the doctrine is to compensate counsel for producing such
7
> benefits and to preclude the unjust enrichment of those who receive the benefits.

8    *Kerr*, 3 P.3d at 1137–38. Similarly, attorney charging liens "ensure that a dishonest client does

9    not walk away with an award secured for the client through the attorney's efforts without paying

10   the attorney for those efforts." *Langerman*, 204 P.3d at 1103.

11    Both of these doctrines reward attorneys for their direct participation in a case. Litigation

12   funders do not directly "produce" benefits or "secure" awards for the litigant. They are at least

13   one step removed as they fund the attorneys (or the pro se litigant) who themselves directly obtain

14   the relevant benefits. Moreover, the Lenders have other remedies to recover any debt owed to

15   them, including suing Morris under the Funding Agreements. Therefore, defendants Nishi and

16   Groden are not proper claimants to the Proceeds for purposes of this interpleader action.

17    The next issue is whether Morris's domicile destroys diversity for purposes of the

18   interpleader statute. Diversity jurisdiction is established for statutory interpleader if Morris and

19   McGee are citizens of different states, or if one of them is a citizen of any state and the other is a

20   citizen or subject of a foreign state. 28 U.S.C. §§ 1332(a), 1335(a)(1). One's state of citizenship

21   is defined by domicile, not residence. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir.

22   2001). "A person's domicile is her permanent home, where she resides with the intention to

23   remain or to which she intends to return." *Id.*

24    Plaintiffs plead that Morris is a Nevada citizen, and he admits this. (FAC ¶ 4; Dkt. No. 26

25   ¶ 4.) However, the Court is not required to deem true without examination that Morris is a citizen

26   of Nevada because domicile is a mixed question of law and fact. *Lew v. Moss*, 797 F.2d 747, 750

27   (9th Cir. 1986); *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The party asserting diversity

28

1    jurisdiction must justify her allegations by a preponderance of evidence. *McNutt v. Gen. Motors*

2    *Acceptance Corp. of Ind.*, 298 U.S.178, 189 (1936).

3         "[A] person's domicile is not lost until a new one is acquired." *Lew*, 797 F.2d at 750. "A

4    change in domicile requires the confluence of (a) physical presence at the new location with

5    (b) an intention to remain there indefinitely." *Id.*

6         [T]he determination of an individual's domicile involves a number of factors (no
         single factor controlling), including: current residence, voting registration and
7        voting practices, location of personal and real property, location of brokerage and
         bank accounts, location of spouse and family, membership in unions and other
8        organizations, place of employment or business, driver's license and automobile
         registration, and payment of taxes.
9

10   *Id.* at 750. There is a presumption in favor of a person's established domicile against her alleged

11   newly-acquired domicile. *Id.* at 751.

12        "'It is well-settled that an American citizen living abroad cannot invoke federal court

13   jurisdiction under 28 U.S.C. § 1332(a) because he or she is not considered a citizen[] of any state

14   as that section requires.'" *Turan Petrol., Inc. v. Lentin*, 482 F. Supp. 2d 1170, 1171 (C.D. Cal.

15   2007) (quoting *De Wit v. KLM Royal Dutch Airlines, N.V.*, 570 F. Supp. 613, 617 (S.D.N.Y.

16   1983)). Put differently, an American citizen living abroad is neither domiciled in any state within

17   the U.S., nor the citizen or subject of a foreign nation. *See Brady v. Brown*, 51 F.3d 810, 815 (9th

18   Cir. 1995). Therefore, that person cannot invoke diversity jurisdiction under 28 U.S.C. § 1332(a).

19   *Id.*

20        To determine subject matter jurisdiction on a motion to dismiss under Rule 12(b)(1), the

21   Court may consider extra-pleading evidence that is properly before the court. *Ass'n of Am. Med.*

22   *Colleges v. U.S.*, 217 F.3d 770, 778 (9th Cir. 2000). Therefore, the Court may consider Morris's

23   sworn declaration (Dkt. No. 47-1 at 21–22) without converting the instant motion into one for

24   summary judgment under Rule 12(d). Following the same reasoning, the Court may *not* consider

25   the e-mails submitted by McGee which seem to indicate that Morris may no longer be a resident

26   of Nevada (Dkt. No. 28-2 at 37–47), because they are unauthenticated. *See Clark v. County of*

27   *Tulare*, 755 F. Supp. 2d 1075, 1084 (E.D. Cal. 2010). Likewise, the Court may not consider the

28

1    affidavit by Keith A. Sobraske (Dkt. No. 28-3 at 6–142), a private investigator that McGee hired,

2    because the exhibits Sobraske relies upon are unauthenticated. *See* FED. R. EVID. 901, 902.

3          In his declaration, Morris avers that his "last known address" was in Las Vegas, Nevada.

4    During the past year, he has stayed with friends (in unknown locations). As of October 2, 2013,

5    the date of the declaration, he was staying in a hotel in Ukraine. When in the United States, he

6    stays with friends (in unknown locations within the U.S.). His personal property is stored in

7    Nevada, and his sister is a resident of Nevada. He declares that his employer, Mobile POS,

8    intends to base its company in Nevada once funding is secured, although the date when this might

9    occur is uncertain. Morris also declares that he intends to purchase or lease a residence in Nevada

10   once this uncertain date of funding comes to pass. Finally, he avers that "[i]t is [his] current

11   intention and for the foreseeable future it is [his] intent to remain a resident of Las Vegas." (Dkt.

12   No. 47-1 at 22.)

13         The Court is not convinced by a preponderance of the evidence that Morris was, or is

14   currently, domiciled in Nevada. He provides a "last known address," but does not indicate this

15   was his prior *residence*. He does not affirmatively state that he ever lived in Nevada or for how

16   long. In the absence of long-term physical presence, the other indicia of domicile take on greater

17   meaning. *See Abbot v. United Venture Capital, Inc.*, 718 F. Supp. 823, 826–827 (D. Nev. 1988).

18   He declares that he will lease or purchase a home whenever he returns to Nevada, confirming that

19   he does not presently have a "fixed habitation or abode" in Nevada. *Lew*, 797 F.2d at 750.

20   Although it is relevant that he has personal property and family in Nevada, those facts are

21   insufficient to overcome the predominant fact that he does not have a current residence in

22   Nevada. His claim of Nevada residency rings hollow in the absence of a "fixed habitation or

23   abode" to which he could return. *See* 13E ARTHUR R. MILLER ET AL., FEDERAL PRACTICE &

24   PROCEDURE § 3612 (3d ed. 2013) ("Domicile . . . has both a physical and mental dimension[.]").

25         However, it is unclear that he has established a new domicile outside of the United States.

26   There is no indication that he intends to reside in Ukraine, or anywhere else, either indefinitely or

27   permanently. Thus, Morris's domicile is uncertain. He appears to be "stateless." *See Smith v.*

28   *Simmons*, 2008 WL 744709 at *9 (E.D. Cal. 2008). The presumption against newly-acquired

1    domicile does not apply because Morris has not sufficiently established that he was domiciled in

2    Nevada prior to initiating his world travels. He has not established that he is domiciled in any

3    state other than Arizona, which would be necessary to establish diversity jurisdiction under 28

4    U.S.C. § 1335. Moreover, because Morris *could* be domiciled in Arizona, diversity jurisdiction is

5    improper. *Nablo v. Desert Plastics, LLC*, 2006 WL 288394 at *3 (D. Ariz. 2006) ("In the absence

6    of an affirmative allegation of Plaintiff's state of domicile, the Court cannot simply assume his

7    state of citizenship.").

8         Plaintiffs and Morris have failed to prove the "minimal diversity" required for subject

9    matter jurisdiction under the interpleader statute, 28 U.S.C. § 1335.

10         **B.     Improper Venue – FED. R. CIV. P. 12(b)(3)**

11         Under 28 U.S.C. § 1397, venue for interpleader actions is proper "in the judicial district in

12    which one or more of the claimants reside." In accord with the above, the residency of Nishi and

13    Groden is irrelevant. McGee is an Arizona resident. Morris has not established that he was a

14    Nevada resident on the date this case was filed. Therefore, venue in the District of Nevada is

15    improper.

16

17    **III.    CONCLUSION**

18         For the reasons set forth above, the Court hereby ORDERS:

19         1. The Motion to Dismiss (Dkt. No. 28) is GRANTED on two independent grounds: lack

20             of subject matter jurisdiction under Rule 12(b)(1) and improper venue under Rule

21             12(b)(3).

22         2. The Interpleader Motion (Dkt. No. 12) is DENIED as moot.

23         3. The motion for expedited accounting (Dkt. No. 27) is DENIED as moot.

24         Dated: December 12, 2013

25

26                              ANDREW P. GORDON

27                              UNITED STATES DISTRICT JUDGE

28